# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE RIOS,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:17-cv-00728-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 15, 23) |

**I.**

**INTRODUCTION**

Plaintiff Jorge Rios ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for a period of disability and disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from degenerative disc disease and a rotator cuff tear. For the reasons set forth below, Plaintiff's social security appeal shall be denied.

/ / /

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 10, 25.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II, alleging disability beginning March 19, 2013. (AR 134-140.) Plaintiff's application was initially denied on February 19, 2014, and on reconsideration on June 9, 2014. (AR 76-79, 84-90.) Plaintiff requested and received a hearing before Administrative Law Judge T. Patrick Hannon ("the ALJ"). Plaintiff appeared for a hearing on February 18, 2016. (AR 39-49.) On March 8, 2016, the ALJ found that Plaintiff was not disabled. (AR 19-34.) The Appeals Council denied Plaintiff's request for review on March 30, 2017. (AR 1-3.)

### A. Relevant Hearing Testimony

Plaintiff testified with the assistance of an interpreter at the hearing on February 18, 2016. (AR 42-49.) He speaks a little bit of English and is able to say good morning. (AR 42.) He has a driver's license. (AR 42.)

He cannot work because he has a lot of pain in his shoulders, back, and right leg. (AR 43.) When he is sitting or standing for a while, his back begins to hurt. (AR 44, 47.) He can sit, but he cannot sit for an 8-hour day even with breaks every two hours. (AR 43.) He can stand and walk for less than two hours in an 8-hour day. (AR 48.) He cannot lift his leg when he walks a lot. (AR 48.)

During the day, he watches TV while sitting or lying down. (AR 44.) He spends half the day lying down. (AR 56.) The pain in his shoulders is constant, but sometimes it gets worse. (AR 46.) It is constant when he moves his hand. (AR 46.) He has pain in his shoulders all the time and whenever he moves them. (AR 46-47.) His back surgery in 2007 helped the pain in his lower back a little bit, but it never went away. (AR 47.) When he worked, he had pain all the time, but it was not as strong as it is now. (AR 47.) The pain gets worse when he lifts things. (AR 47.) He is able to lift a gallon of milk. (AR 47.) If he lifts more than a gallon of milk, the pain in his shoulders increases. (AR 47.)

He sees Dr. Sorensen every month for his shoulders and back. (AR 48.) He has been seeing him for a long time and definitely since the time he stopped working. (AR 48.)

His wife is disabled with rheumatoid arthritis and thyroid problems. (AR 44.) He has two kids who are fifteen and thirteen. (AR 44-45.) His daughters help his wife. (AR 48.) He goes with his wife and children to shop. (AR 44.)

Thomas Dachelet, a Vocational Expert ("VE"), also testified at the hearing. (AR 45-46.) The forklift driver job is an industrial truck operator and sometimes forklift operator, Dictionary of Occupational Titles ("DOT") # 921.683-050, medium, and SVP 3. (AR 45.) However, it was performed at light per the work history report. (AR 45.) The animal handler is a stockyard laborer or laborer/stock, DOT # 410.664-010, heavy, and SVP 4. (AR 45-46.) However, it was performed at light per the work history report. (AR 46.)

### B. ALJ Findings

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017.
- Plaintiff has not engaged in substantial gainful activity since March 19, 2013, the alleged onset date.
- Plaintiff has the following severe impairments: degenerative disc disease and rotator cuff tear.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- After careful consideration of the entire record, Plaintiff has the residual functional capacity ("RFC") to perform less light work as defined in 20 CFR 404.1567(b) except Plaintiff can frequently climb, balance, stoop, kneel, crouch, and crawl; occasionally reach; and frequently handle, finger, and feel.
- Plaintiff is capable of performing past relevant work as a forklift driver and an animal handler as actually performed. This work does not require the performance of work-related activities precluded by Plaintiff's RFC.
- Plaintiff has not been under a disability, as defined in the Social Security Act, from March 19, 2013, through the date of the decision.

(AR 27-34.)

///

# III.

# LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal

quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in giving little weight to the opinion of his treating physician, Dr. Eric N. Sorensen, and in determining at step four that Plaintiff can perform his past relevant work as actually performed. Defendant counters that substantial evidence supports the ALJ's decision.

### A. Dr. Sorensen's March 18, 2014 Opinion

First, the Court discusses whether the ALJ erred in his evaluation of Dr. Sorensen's March 18, 2014 opinion.[2] Plaintiff asserts that the ALJ did not apply the factors for evaluating a treating opinion set forth in 20 C.F.R. § 404.1527(c), as required by Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017), to Dr. Sorensen's opinion. Plaintiff also takes issue with the reasons the ALJ provided for giving little weight to Dr. Sorensen's opinion.

The weight to be given to medical opinions depends upon whether the opinion is proffered

---

[2] The ALJ also recognized that Dr. Sorensen completed a Doctor's Certificate for the State Disability Program on March 12, 2013, and opined that Plaintiff was unable to work from March 9, 2013, through March 18, 2014. (AR 31, 217.) The ALJ gave little weight to this March 12, 2013 opinion because Dr. Sorensen did not evaluate Plaintiff's condition according to the Social Security Administration's definition of disability and because whether Plaintiff is able to work I reserved to the Commissioner. (AR 31.) Plaintiff does not specifically mention Dr. Sorensen's March 12, 2013 opinion or either of the reasons the ALJ provided for the weight given to this opinion. Plaintiff addresses the reasons provided by the ALJ for giving little weight to Dr. Sorensen's March 18, 2014 opinion and all of his arguments are in the context of the March 18, 2014 opinion. Therefore, the Court only discusses Dr. Sorensen's March 18, 2014 opinion.

5

by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general, a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). A treating physician's opinion is entitled to controlling weight on the issue of the nature and severity of the claimant's impairment where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c).

"If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.' " Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2). "In that event, the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician." Orn, 495 F.3d at 632. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting Orn, 495 F.3d at 631).

If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)). Where the treating physician's opinion is contradicted by the opinion of a nontreating physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id. While the contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating physician's opinion, "it may constitute substantial evidence when it is

consistent with other independent evidence in the record." Tonapetyan, 242 F.3d at 1149.

The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957. It is the ALJ's responsibility to consider inconsistencies in a physician opinion and resolve any ambiguity. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999). The ALJ can meet his "burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 779 F.2d 1403, 1408 (9th Cir. 1989)).

This Court agrees with several other district courts that have concluded that Trevizo does not require an explicit analysis of the factors in section 404.1527(c). See Standen v. Berryhill, No. 2:16-cv-1267-EFB, 2017 WL 4237867, at *8 (E.D. Cal. Sep. 25, 2017); Torres v. Berryhill, No. 3:17-cv-01273-H-PCL, 2018 WL 1245106, at *5 (S.D. Cal. March 9, 2018); Hoffman v. Berryhill, 2017 WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017) report and recommendation adopted, 2017 WL 4844545 (S.D. Cal. Sep. 14, 2017)). While there does not have to be an explicit recitation of the factors, the ALJ's decision must reflect that the ALJ considered the factors. Id. Upon review of the ALJ's decision, the Court finds that the ALJ did consider the factors listed in section 404.1527(c) in determining the weight to be provided to Dr. Sorensen's opinion. (AR 29-31.) Next, the Court discusses whether the ALJ provided a specific and legitimate reason supported by substantial evidence for rejecting Dr. Sorensen's opinion.

The ALJ recognized that Dr. Sorensen opined that Plaintiff can lift and carry 20 lbs. occasionally and 10 lbs. frequently, stand 1 hour in an 8-hour workday; walk 2 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; never climb or reach with his left shoulder; occasionally stoop, kneel, crouch, and crawl; and frequently balance, handle bilaterally, and finger bilaterally. (AR 31.) He also opined that Plaintiff must alternate standing and sitting every 2 hours; must stretch for 10 minutes every hour; and would have restrictions with heights and moving machinery. (AR 31.)

The ALJ gave little weight to Dr. Sorensen's March 18, 2014 opinion because it is not supported by the narrative, objective medical evidence, or treatment record and because Dr.

Sorensen merely used a check-off form and did not provide any basis for his conclusion. (AR 31.) The Court first addresses the ALJ's finding that Dr. Sorensen's opinion should be given little weight because he merely used a check-off form and did not provide any basis for his conclusion.

Dr. Sorensen checked off that Plaintiff could lift and carry 20 lbs. occasionally, which was based on rotator cuff tears in his left shoulder and the fact that he was status post laminectomy (back surgery), and Plaintiff could lift and carry 10 lbs. frequently. (AR 313.) Plaintiff could stand for 1 hour and walk for 2 hours because he was status post laminectomy. (AR 313.) Plaintiff could sit for 6 hours of an 8-hour workday, but in the findings section Dr. Sorensen indicates that Plaintiff must be able to change positions. (AR 313.) Plaintiff will need to alternate standing and sitting with a 10-minute stretch break every hour. (AR 314.) He based this finding on "exam." (AR 314.) Dr. Sorensen explained the postural, reaching, handling, and fingering limitations by saying that Plaintiff is unable to adequately use his left arm. (AR 314.) Plaintiff has restrictions with heights and moving machinery based on history and diagnosis. (AR 314.) Question 7 of the medical source statement asks for the bases of the conclusions and even asks for the doctor to include symptoms and objective findings. (AR 314.) However, Dr. Sorensen left this question asking for the bases of his conclusions blank. (AR 314.) Dr. Sorensen indicated that none of his opinions regarding functional capacity are based on subjective limitations of Plaintiff. (AR 315.)

It is clearly established that the ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957. Plaintiff argues that a check-the-box form is not less reliable than any other type of form, so the ALJ should not have rejected Dr. Sorensen's opinion based on his use of a check-the-box form. Plaintiff is correct that the fact that a treating physician used a check-box form is not in itself a specific and legitimate reason to reject the treating physician's opinion. The Ninth Circuit has held that a check-box form should not be rejected where it is based on significant experience with the plaintiff and the form is supported by numerous records. Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014).

As discussed above, in response to questions, Dr. Sorensen indicated that certain limitations were based on general diagnoses, "exam," inability to adequately use the left arm, and "history and diagnosis." (AR 313-314.) Dr. Sorensen did not respond to question 7, which asked for the bases

of his conclusions including the symptoms and objective findings he relied on. (AR 314.) Therefore, the Court must determine whether Dr. Sorensen's check off form opinion is supported by his records.

Dr. Sorensen had the results of Plaintiff's x-rays and MRIs of his shoulders and back. On March 5, 2013, Plaintiff's x-ray of his lumbar spine revealed mild facet arthrosis at L5-S1. (AR 211.) On August 2, 2013, Plaintiff's MRI of his lumbar spine revealed evidence of disc dissection with generalized disc protrusion seen with left paramedian disc herniation at L4-L5 and a slight displacement of the left L4 nerve root. (AR 222.)

On March 5, 2013, Plaintiff's x-rays of his left and right shoulder were normal. (AR 213-214.) On May 2, 2013, Plaintiff's MRIs of his right and left shoulders revealed a partial articular side tear of the supraspinatus tendon without high-grade tear or full thickness tear or tendinous retraction. (AR 218, 220.) There was no atrophy of the rotator cuff muscles. (AR 218, 220.) The right shoulder also had degenerative arthrosis of the acromioclavicular articulation, without effacement of the subacromial fat or narrowing of the supraspinatus outlet. (AR 218.) The left shoulder also had a chondroid appearing lesion in the humeral head that was likely an enchondroma and mild degenerative arthrosis of the acromioclavicular joint. (AR 220.)

Plaintiff's alleged onset date of disability is March 19, 2013, and he attended appointments at Adventist Health Central Valley Network between March 19, 2013, and October 9, 2013.[3] While Dr. Sorensen did not see Plaintiff during all of the appointments, Dr. Sorensen may have based his opinion on the treatment notes from Plaintiff's other visits to Adventist Health Central Valley Network. Therefore, the Court will discuss all the treatment notes from Adventist Health Central Valley Network during this time period.

On March 19, 2013, Plaintiff saw Dr. Sorensen and was tender in his spine and shoulder upon examination. (AR 237.) On May 27, 2013, and May 28, 2013, Plaintiff saw someone other than Dr. Sorensen and had 5/5 bilateral upper extremity. (AR 229, 234.) On June 12, 2013, Plaintiff

---

[3] The Court also notes that during Plaintiff's March 5, 2013 appointment, Plaintiff complained of 5/10 pain in his back and shoulders, but there are no objective findings regarding Plaintiff's back and shoulders. (AR 238.) The March 31, 2011, April 19, 2011, January 13, 2013, January 24, 2013 treatment notes do not have any complaints of back or shoulder pain or objective findings regarding Plaintiff's back or shoulders. (AR 239, 240, 241, 242.)

9

saw someone other than Dr. Sorensen and had a shoulder examination, where he had 4/5 strength and ranges of motion of 150 degrees, 50 degrees, and less than 10 degrees in both shoulders. (AR 232.) He also had impingement signs. (AR 232.) On July 15, 2013, Plaintiff saw Dr. Sorensen and the only objective findings during examination were that his right and left shoulder were sore and his right thigh was sore. (AR 231.) There were no objective examination findings regarding Plaintiff's shoulders or back during multiple other appointments between March 19, 2013, and October 9, 2013. (AR 227, 228, 230, 233, 235, 236.)

On January 14, 2014, Plaintiff saw Dr. Sorensen for an upper respiratory infection and a testosterone shot. (AR 275.) During the musculoskeletal examination, Plaintiff had a normal range of motion. (AR 277.) On February 11, 2014, Plaintiff complained of back pain and muscle pain, but he reported no joint pain and no decreased range of motion. (AR 279.) On examination, he had normal range of motion. (AR 282.) On March 18, 2014, Plaintiff saw Dr. Sorensen for a testosterone and pain shot and complained of recurrent shoulder pain and pain on range of motion compatible with rotator cuff strains. (AR 287.) During the examination, he did have limited range of motion with pain and tenderness over the supra-and infraspinatus tendons posterior capsular. (AR 290.) However, he had normal range of motion of his other joints. (AR 290.)

These are all of the treatment records at the time Dr. Sorensen gave his March 18, 2014 opinion. There are barely any positive objective findings in these treatment records. This is distinct from the situation described in Garrison, where the treating physician's opinion was supported by numerous records. Garrison, 759 F.3d at 1013. As the Ninth Circuit recognized, an unsupported and unexplained check-box form may not merit weight. Id. The Court finds that substantial evidence supports the ALJ's finding that Dr. Sorensen's opinion should be given little weight because it was on a check-off form and he did not provide any basis for his conclusion. Therefore, the ALJ provided a specific and legitimate reason supported by substantial evidence.[4]

Even to the extent that it was error for the ALJ to discount Dr. Sorensen's opinion because it

---

[4] Defendant asserts that the ALJ rejected Dr. Sorensen's opinion that Plaintiff was unable to work because that is an ultimate issue reserved for the Commissioner. However, that was a reason the ALJ gave for rejecting Dr. Sorensen's March 12, 2013 opinion.

10

is not supported by the narrative, objective medical evidence, or treatment record without any further explanation and detail, any error is harmless because the ALJ provided a specific and legitimate reason supported by substantial evidence for discounting Dr. Sorensen's March 18, 2014 opinion. The ALJ's decision will not be reversed for errors that are harmless. Burch, 400 F.3d at 679; Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

### B. Past Relevant Work as Actually Performed

Plaintiff asserts that the ALJ's decision that Plaintiff can perform his past relevant work as a forklift driver and an animal handler as actually performed lacks logic and rationality. Plaintiff contends that the ALJ did not explain or develop whether he retained the capacity to perform his past work. Defendant counters that the ALJ properly relied on the VE's testimony that was based on Plaintiff's work history report to determine how Plaintiff performed his past relevant work.

"At step four [of the five-step disability determination process], claimants have the burden of showing that they can no longer perform their past relevant work" as actually performed or as generally performed in the national economy. Pinto v. Massanari, 249 F.3d 840, 844-845 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e) and 416.920(e); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990)). The Ninth Circuit explained, "[a]lthough the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto, 249 F.3d at 844. The ALJ is not required to make "explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed." Id. at 845.

To determine whether a claimant retains the capacity for past relevant work, the Social Security Administration identified three tests:

1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packing job," etc.

2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.

3. Whether the claimant retains the capacity to perform the functional demands the job duties of the job as ordinarily required by employers throughout the national economy.

SSR 82–61.

11

A properly completed vocational report such as the work history report may be used to define a claimant's past relevant work as actually performed. Pinto, 249 F.3d at 845 (citing SSR 82-61) ("A properly completed SSA-3369- F6, Vocational Report, may be sufficient to furnish information about past work.")

Here, the ALJ found at step four that Plaintiff could perform his past relevant work as a forklift driver and an animal handler as actually performed. (AR 32-33.) This finding was based on Plaintiff's work history report and the VE's testimony that was based on the work history report. (AR 32-33.) Specifically, the ALJ stated:

> At the hearing, the impartial vocational expert testified that the claimant has past relevant work as a forklift driver-industrial operator (DOT 921.683-050), generally performed at medium exertional level, actually performed at light exertional level, specific vocational preparation ("SVP") 3; loader/warehouse laborer (DOT 922.687-058), medium exertional level, SVP 2; animal handler/stockyard labor (DOT 410.664-010), generally performed at heavy exertional level, actually performed at light exertional level, SVP 4; and packager (920.685-078), generally performed at medium exertional level, actually performed at light exertional level SVP 2. The undersigned notes that the claimant performed this work within the past 15 years and earned sufficient earnings for this work to be properly classified as past relevant work. The undersigned relies on the vocational expert's testimony in accordance with SSR 00-4p because it is consistent with the DOT and not in conflict with any SSA policies or regulations.
>
> On the claimant's work history report, the claimant wrote that he did no climbing; stooping; kneeling; crouching; crawling; handling, grabbing, or grasping big objects; reaching; or writing, typing, or handling small objects at his positions as a forklift driver and animal handler (Exhibit 3E/3, 5). He also did not describe any climbing, balancing, or kneeling at either position (Exhibit 3E, 3, 5). Because both the claimant's past relevant work as a forklift driver and animal handler were actually performed at the light exertional level and did not require more than frequent climbing, balancing, stooping, kneeling, crouching, or crawl[ing]; occasional reaching; or frequent handling, finger, or feeling, the undersigned finds that the claimant is able to perform his past relevant work as an animal handler and forklift driver as actually performed.

(AR 32-33.)

During the hearing, the VE testified that the forklift driver job is an industrial truck operator and sometimes forklift operator, DOT # 921.683-050, medium, and SVP 3, but it was performed at light per the work history report. (AR 45.) The VE also testified that the animal handler job is a stockyard laborer or laborer/stock, DOT # 410.664-010, heavy, and SVP 4, but it was performed at light per the work history report. (AR 45-46.)

The work history report indicates that Plaintiff worked as an animal handler for a cattle

12

company from October 2007 through July 2008 and a forklift driver for a container company from March 2001 through September 2002. (AR 166.) Plaintiff through Araceli Rios filled out the job specific pages for the animal handler and forklift driver jobs. (AR 168, 170.) The Court first addresses Plaintiff's challenge to the ALJ's characterization of who completed the work history report.

### 1. Author of the Work History Report

Plaintiff argues that the ALJ inaccurately stated that Plaintiff completed the form when in fact it was completed by Araceli Rios. Plaintiff asserts that this inaccurate characterization of evidence warrants remand. The ALJ described Plaintiff's work history report by saying that "the claimant wrote" and "[h]e did not describe." (AR 32-33.) The work history report indicates that Araceli Rios completed the form on November 21, 2013. (AR 177.) Araceli Rios is Plaintiff's spouse. (AR 183.) While Araceli Rios was the person who physically wrote the answers on the form, Plaintiff submitted this form and it was based on Plaintiff's work history. The fact that Plaintiff's wife helped Plaintiff complete the form and she was the one who physically wrote the answers on the form does not make the ALJ's statements that "the claimant wrote" and "[h]e also did not describe" materially inaccurate characterizations of the evidence. The fact that Plaintiff's wife wrote the answers on the form does not affect the ALJ's ability to rely on the information provided in the work history report. Next, the Court discusses whether there is substantial evidence to support the ALJ's step four finding.

### 2. Substantial Evidence to Support Step Four Finding

Plaintiff contends that the ALJ did not develop, explain, or secure evidence regarding whether Plaintiff retained the functional capacity to perform his past work. Plaintiff also asserts that the ALJ should not have relied on the work history report because there are a number of alleged inconsistencies between his answers on the work history report and what he now contends is required to perform the work. Defendant argues that Plaintiff is now applying his own speculative rationale as to how his work was allegedly performed. Defendant points out that Plaintiff does not provide any specifics regarding how he could not perform his past jobs as actually performed based on the RFC that the ALJ assessed.

Here, the ALJ summarized the VE's testimony regarding Plaintiff's past relevant work that found that the forklift driver and animal handler jobs were actually performed at light work based on Plaintiff's work history report. (AR 32.) The ALJ stated that he was relying on the VE's testimony. (AR 32.) The ALJ then summarized the work history report for the forklift driver and animal handler jobs. (AR 32-33.) The ALJ then made the finding that Plaintiff could perform his past relevant work as an animal handler and forklift driver as actually performed because Plaintiff performed these jobs at the light exertional level and did not require more than the postural, reaching, and manipulative limitations in the RFC. (AR 33.) Therefore, the ALJ explained that he was relying on Plaintiff's work history report and the VE's testimony that was based on Plaintiff's work history report to determine the demands of Plaintiff's former work. The ALJ then explained that when comparing the demands of Plaintiff's former work to Plaintiff's RFC, he can perform his past relevant work as actually performed.

Plaintiff asserts that the ALJ should have further developed the record regarding how his past relevant work was actually performed. He blames the ALJ for not asking him any questions about his job duties. However, a properly completed vocational report such as the work history report may be used to define a claimant's past relevant work as actually performed. Pinto, 249 F.3d at 845 (citing SSR 82-61). Therefore, if an ALJ utilizes a properly completed vocational report, he does not have to elicit testimony at the hearing from plaintiff or a vocational expert about the plaintiff's past relevant work or any other evidence regarding the plaintiff's past relevant work as actually performed.

Next, the Court addresses the alleged inconsistencies in the forklift driver and animal handler work history forms that Plaintiff contends result in the work history reports not being substantial evidence to support the ALJ's definition of Plaintiff's past relevant work as actually performed.

Defendant asserts that Plaintiff waived the right to challenge the ALJ's characterization of his past relevant work and that Plaintiff and his representative could have inquired further during the hearing. Defendant, citing Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), asserts that Plaintiff has waived a challenge regarding the VE's characterization of how the work was actually performed because Plaintiff failed to raise the issue during the administrative proceedings. Plaintiff,

citing Lamear v. Berryhill, 865 F.3d 1201, 1206 (9th Cir. 2017), contends that a claimant's administrative counsel's failure to raise a specific issue to the ALJ does not relieve the Commissioner of her duty to reconcile apparent conflicts through questioning.

In Meanel, the claimant challenged at the district court the VE's testimony regarding the number of alternative jobs available by relying on "new statistics that she admittedly failed to raise at both her hearing before the ALJ and the Appeals Council." Meanel, 172 F.3d at 1115. The Ninth Circuit held that the statistics-based challenge to the VE's testimony was waived: "We now hold that, at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." Id.

However, in Lemear, the Ninth Circuit determined that "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is *required* to reconcile the inconsistency." Lemear, 865 F.3d at 1206 (quoting Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015)).

The Court finds that Plaintiff has waived any challenges to the reliability of the work history report. Plaintiff did not raise the issue of whether the work history report was properly completed to the ALJ or the Appeals Council. This case is distinguishable from Lamear because there was no duty imposed on the ALJ here. This is not the situation where there was an obvious inconsistency between the job description as generally performed in the national economy and the DOT or an obvious inconsistency between a job in the national economy that the VE said a plaintiff could perform and the DOT. Plaintiff is not challenging the ALJ's classification of the forklift driver and animal handler jobs. Plaintiff is not arguing that there is an inconsistency between the information in her work history report regarding the specific requirements of her past relevant work and her RFC.

Here, the ALJ found Plaintiff could perform past relevant work as actually performed. Plaintiff argues that there are obvious inconsistencies between the information in the work history report and how he now alleges these jobs must function. He had the opportunity to raise these challenges to the work history report before the ALJ and the Appeals Council. Therefore, Plaintiff

1 has waived any arguments regarding alleged inconsistencies between the information in the work
2 history report and how he now alleges these jobs must function.

Assuming arguendo that Plaintiff did not waive a challenge to whether there are inconsistencies in the work history report, the Court next addresses Plaintiff's alleged inconsistencies in the forklift driver form and the animal handler form.

**a.    Forklift Driver**

Plaintiff is trying to discredit the forklift driver form by pointing out three alleged inconsistencies.

First, Plaintiff asserts that a forklift is equipment and/or a machine, which he alleges is inconsistent with the response on the work history form that indicates that Plaintiff never used a machine, tool, or equipment when working the forklift driver job. However, this one inconsistency itself does not show that Plaintiff cannot perform the responsibilities for the forklift driver job or that the whole form should be discredited. Further, as Defendant points out, the RFC does not have any limitations regarding working with machinery.

Second, Plaintiff appears to be asserting that there is a potential inconsistency regarding whether Plaintiff sat while using the forklift. Plaintiff points out that the work history report indicated that Plaintiff did not sit when working the forklift driver job. Plaintiff contends that the record is not clear what kind of forklift he used. Plaintiff provides a link in his opening brief to a website that sells multiple types of forklifts. See https://www.forkliftselect.com/types-of-forklifts/ (last visited June 27, 2018). While it appears that Plaintiff provides this website to show that people sit down while using/driving a forklift, the website shows several forklifts that can be operated by a person who is standing. Id. Therefore, it is possible for a person to stand while operating a forklift and Plaintiff's work history report that indicates that he did not sit while at the forklift driver job is not necessarily incorrect.

Third, Plaintiff argues that it is common sense that gauge shifting, using the steering wheel to drive, or using a key to turn on the forklift requires some sort of reaching. However, it is not necessarily reaching the arm if Plaintiff is pressing buttons, shifting, and turning a key that are directly below where he is standing with his arm and shoulder not reaching. While Plaintiff is

1 correct that many forklift drivers may reach while operating a forklift, it is possible to operate a forklift while standing without reaching.

Therefore, the Court finds that the work history report for the forklift driver job is not so contradictory that the ALJ could not rely on it. Thus, substantial evidence supports the ALJ's decision that Plaintiff could perform her past relevant work as a forklift driver as actually performed.

### b. Animal Handler

Plaintiff tries to discredit the animal handler form by asserting that it is common sense and reasonable that giving water to a small calf requires some grabbing of objects such as the container of water and some reaching to put the water in the container making sure to put it in the location that the calf can drink. While Plaintiff believes that it is not reasonable to give water to a small calf without grabbing a container for the water, reaching to put water in the container, and putting the container in the location that the calf can drink form it, it is possible to give water to a small calf without doing these things. Plaintiff could have turned on a hose or spigot to allow water to go into a container that is in a set location for the calf where Plaintiff does not have to move the container. Reaching and handling a container is not necessarily required for giving water to a small calf.

Even to the extent that there are inconsistencies in the animal handler work history report that result in there not being substantial evidence to support the ALJ's finding that Plaintiff could perform his past relevant work as an animal handler as actually performed, any error is harmless because there is substantial evidence to support the finding that Plaintiff could perform his past relevant work as a forklift driver as actually performed. Thus, the Court finds that the ALJ did not err in finding at step four that Plaintiff could perform his past relevant work as actually performed.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in giving little weight to Dr. Sorensen's March 18, 2014 opinion and in finding at step four that Plaintiff could perform his past relevant work as actually performed.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's social security appeal is DENIED.

It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jorge Rios. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **July 12, 2018**

_____
UNITED STATES MAGISTRATE JUDGE